

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ian H. Levin | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 40 | **DATE** | 10/1/2002 |
| **CASE TITLE** | Phelan vs. City of Chicago | | |

MOTION:

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter memorandum opinion and order on defendant's City of Chicago motion for summary judgment. Motion by plaintiff to strike [82-1] is denied in part and granted in part. Defendant's motion for summary judgment [72-1] is granted and the cause is dismissed with prejudice.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

| | |
|---|---|
| SM | courtroom deputy's initials |

2
number of notices

OCT 0 3 2002
date docketed

docketing deputy initials

10/1/2002
date mailed notice

SM
mailing deputy initials

**Document Number**

91

Date/time received in central Clerk's Office

JAMES PHELAN,            )

         Plaintiff,       )

v.                    )

CITY OF CHICAGO,    )

         Defendant.    )

DOCKETED
OCT 0 3 2002

Case No. 99 CV 40

Magistrate Judge Ian H. Levin

## MEMORANDUM OPINION AND ORDER

Plaintiff James Phelan ("Plaintiff") seeks recovery against Defendant City of Chicago (the "City") for reverse race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Pending before the Court is the City's Motion for Summary Judgement. For the reasons set forth below, the Court grants the City's Motion for Summary Judgment.

## BACKGROUND FACTS

Plaintiff was first hired by the City as a police officer in 1992. (2nd. Am. Compl. ¶ 4.) After Plaintiff took a leave of absence from the City to serve as an Illinois State Representative, he graduated from the Chicago Police Academy in September of 1993. (*Id.*) In October of 1993, the Chicago Police Department granted Plaintiff a leave of absence, which was subsequently extended for twelve month periods in 1994, 1995, and 1996. (*Id.* ¶ 6.)

On November 1, 1995, while Plaintiff was on leave from the Chicago Police Department, he was hired by the City's Department of Streets and Sanitation to fill the Ward Superintendent



position for the 23rd Ward. (2nd. Am. Compl. ¶ 7.) Eileen J. Carey (Caucasian), the Commissioner of the Department of Streets and Sanitation, interviewed Plaintiff and made the decision to hire him for the Ward Superintendent position.[1] (Def.'s LR56.1(a)(3) St. ¶¶ 15, 18.)

In his position as Ward Superintendent, Plaintiff typically supervised two Refuse Collection Coordinators and twenty-two laborers who operated ten garbage trucks and one street sweeper. (Def.'s LR56.1(a)(3) St. ¶ 22.) Plaintiff's immediate supervisor was Thomas Ryan (Caucasian), the Superintendent for Division IV of the Bureau of Sanitation, Department of Streets and Sanitation. (Id. ¶ 19.) Ryan reported to Michael Picardi (Caucasian), the General Superintendent for the Department of Streets and Sanitation, Bureau of Sanitation. (Id. ¶ 20.) Picardi reported to Sanchez who in turn reported to Carey.[2] (Id.)

Plaintiff worked full-time as Ward Superintendent until June of 1997, when he took a leave of absence because of personal health problems. (Def.'s LR56.1(a)(3) St. ¶ 50; Catharine Mullen Hennessy Aff. ¶ 3.) Subsequently, in September of 1997, while Plaintiff was still on leave, he applied for and was granted leave under the Family and Medical Leave Act ("FMLA"). (Id.)

In September of 1997, Plaintiff was indicted for mail fraud. (2nd. Am. Compl.¶ 15.) The indictment did not involve any allegations of misconduct related to Plaintiff's employment with the City. (Id.) Plaintiff was subsequently acquitted of the mail fraud charges. (Id.)

In October of 1997, when Plaintiff returned from his leave of absence, Carey terminated him

---

[1]Alfred Sanchez (Hispanic), Deputy Commissioner of the Department of Streets and Sanitation also interviewed Plaintiff for the Ward Superintendent position and recommended to Carey that she hire Plaintiff. (Def.'s LR56.1(a)(3) St. ¶ 16, 17.)

[2]William Bresnahan (Caucasian) was the Assistant Commissioner of the Department of Streets and Sanitation during the relevant period. (Def.'s LR56.1(a)(3) St. ¶ 31.)

because of his poor performance.[3] (Def.'s LR56.1(a)(3) St. ¶ 59.) Carey informed Bresnahan of her decision to terminate Plaintiff's employment, and explained that a change was being made with the Ward Superintendent in the 23rd Ward. (*Id.* ¶ 60.)

On October 16, 1997, Plaintiff and his attorney met with Bresnahan and Sanchez. (Def.'s LR56.1(a)(3) St. ¶ 63.) During the meeting, Plaintiff was given a termination letter and told by Sanchez that he was being terminated because he was an ineffective Ward Superintendent. (*Id.* ¶ 64.) Upon the advice of his attorney, Plaintiff signed the termination letter and Bresnahan provided Plaintiff with a copy of the letter. (*Id.* ¶ 65.) Plaintiff's reinstatement from his leave of absence and termination were processed with an effective date of October 23, 1997. (*Id.* ¶ 66.)

## LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party had produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC v. Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997).

---

[3]The issues involving Plaintiff's poor performance included the fact that he could not get his ward cleaned in a timely manner; his superiors' were unable to locate him when he was suppose to be accessible; he was not able to answer basic questions regarding the status of his ward's clean-up efforts; his reliance on two coordinators working under him; and his refusal to use the assigned City van during working hours. (*See* Def.'s LR56.1(a)(3) St. ¶¶ 25, 27, 29, 30, 32, 34, 35, 37.)

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and to draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 964 (7th Cir. 1998). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, the nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Linc*, 129 F.3d at 920. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505 or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

"[S]ummary judgment is improper in a discrimination case where a material issue involves any weighing of conflicting indications of motive and intent." *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir. 1985), *citing, Kephart v. Inst. of Gas Tech.*, 630 F.2d 1217, 1218 (7th Cir. 1980). On the other hand, the Seventh Circuit in *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1573 (7th Cir. 1989) explained that summary judgment can be appropriate in employment discrimination cases when:

> . . . realization that Title VII is occasionally or perhaps more than occasionally used by plaintiffs as a substitute for principles of job protection that do not yet exist in American law, [has] led the courts to take a critical look at efforts to withstand . . . summary judgment. A district judge faced with such a motion must decide . . . whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed.

## ANALYSIS

### I.  MOTION TO STRIKE

Plaintiff first moves to strike over forty paragraphs of the City's Statement of Undisputed Material Facts submitted in support of its Motion for Summary Judgment. For the following reasons, the Court denies, in part, and grants, in part, Plaintiff's Motion to Strike.

Plaintiff first contends that the facts delineated in paragraphs 10-14, 16, 17, 19-21, 23-43, 49, 53-62 and 80 should be stricken because they are not "of consequence" pursuant to Rule 401 of the Federal Rules of Evidence to a determination of whether the City is entitled to summary judgment because they primarily relate to performance problems which Plaintiff claims are irrelevant or unknown by Carey, the decision-maker in this case. (Fed.R.Evid.401.) Plaintiff asserts that the cited factual contentions identifying those individuals who interviewed or supervised him as well as those contentions delineating the races of the previous Ward Superintendents (including the subject 23rd Ward) have no bearing on any issue in this case. (Pl.'s Mot. to Strike at 1-2.)

The Court disagrees with Plaintiff and finds that because one of the *prima facie* issues in this case is whether Plaintiff was performing his job according to the City's legitimate expectations, evidence concerning Plaintiff's performance is clearly relevant, material and "of consequence" to the Court's determination of the subject summary judgment motion.[4] The Court also notes that even though Carey may not have been aware of every incident involving Plaintiff's performance, information concerning Plaintiff's poor performance was communicated to her through Plaintiff's superiors and is clearly "of consequence" to the determination of whether he was performing his job

---

[4]The Court strikes paragraph 21 of the City's Statement of Undisputed Material Facts because it is irrelevant to the Court's determination of the subject motion.

satisfactorily. Furthermore, the identity of those individuals who interviewed or supervised Plaintiff as well as a delineation of the races of the previous Ward Superintendents is clearly relevant in a reverse race discrimination action.

Plaintiff contends that paragraphs 10-12 should be stricken because they constitute expert opinion regarding the job responsibilities of a Ward Superintendent and the City has not complied with the expert disclosure requirements of Rule 26(a)(2) of the Federal Rules of Civil Procedure. (Pl.'s Mot. to Strike at 3; Fed.R.Civ.P.26(a)(2).) The Court, however, finds that Plaintiff's assertion is without merit, in that, the Affidavit statement (which is the basis for paragraphs 10-12) made by Plaintiff's supervisor (Ryan) would be viewed by the Court as lay testimony that is not subject to the expert disclosure requirements of Rule 26(a)(2).

Plaintiff asserts that paragraphs 37, 40-43, 49, 53, and 56-59 should be stricken because they are based on self-serving and conclusory assertions contained in affidavits. (Pl.'s Motion to Strike at 3-4.) The Court, however, finds that the above-cited paragraphs should not be stricken because the subject affidavits comply with Rule 56(e) of the Federal Rules of Civil Procedure, in that, they are based on the personal knowledge (of a witness competent to testify) and set forth admissible facts. (Fed.R.Civ.P. 56(e).) Specifically, the affidavits signed by Eileen Carey, Thomas Ryan, Alfred Sanchez, William Bresnahan, and Catharine Mullen Hennessey, which the subject paragraphs are based on, demonstrate compliance with the federal rule. The Court also notes that some of the above-cited paragraphs referenced by the Plaintiff do not cite to any affidavits (i.e., paragraphs 40-43, 56 and 59); rather, they are based on deposition testimony.

Plaintiff next asserts that paragraphs 10-12, 37, 38, 40-43, 49, 53-60, and 61 should be stricken because they are based on inadmissible evidence. (Pl.'s Mot. to Strike at 4.) As determined

by the Court *supra*, paragraphs 37, 40-43, 49, 53, and 56-59 are based on affidavit and/or deposition testimony which complies with Rule 56(e); consequently, the factual contentions constitute admissible evidence. (Fed.R.Civ.P. 56(e).) Furthermore, paragraphs 10-12, 38, 60, and 61 contain relevant factual contentions based on admissible affidavit and/or deposition testimony; therefore, the Court will not strike them.

Plaintiff further asserts that paragraphs 38, 54, 55, and 60-62 should be stricken because they contain inadmissible hearsay since they describe conversations between various City employees concerning Plaintiff's performance. (Pl.'s Mot. to Strike at 4.) The Court disagrees. The Court finds that these statements are not being offered for the truth of the matter asserted and are not inadmissible. *See e.g., Brill v. Lante Corp.*, 119 F.3d 1266, 1271 (7th Cir. 1997)(holding that out-of-court statements concerning an employee's performance problems did not constitute inadmissible hearsay because they went to the issue of the employer's honest belief concerning such problems.)

## II. RACE DISCRIMINATION CLAIM

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . " 42 U.S.C. § 2000e-2(a)(1). In order to prove a case of race discrimination under Title VII, Plaintiff must offer direct evidence of discrimination or, if he is unable to do so, he may use the indirect, burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Because Plaintiff has not offered any direct evidence of discrimination, his case is governed by the *McDonnell Douglas* indirect, burden-shifting

approach.[5]

Under the *McDonnell Douglas* burden-shifting framework, Plaintiff must first establish a *prima facie* case of reverse race discrimination. *Ferguson v. Robert R. McCormick Tribune Found.,* 108 F.Supp.2d 1033, 1038 (N.D. Ill. 2000) (". . . plaintiff has the initial burden of establishing a prima facie case of reverse discrimination"); *Paulos-Johnson v. Advocate Trinity Hosp.,* No. 01 C 3639, 2002 WL 230908, at *5 (N.D. Ill. Feb. 15, 2002). In order to establish a *prima facie* case of reverse race discrimination using the *McDonnell Douglas* framework, Plaintiff must show that: (1) background circumstances exist which support an inference that the City is one of those unusual employers who discriminates against the majority; (2) he was meeting the City's legitimate performance expectations (i.e., he was performing his job satisfactorily); (3) he was subjected to an adverse employment action; and (4) the City treated similarly situated employees outside the protected class more favorably. *Mills v. Health Care Serv. Corp.,* 171 F.3d 450, 455-57 (7th Cir. 1999); *Ferguson,* 108 F.Supp.2d at 1038; *Paulos-Johnson,* 2002 WL 230908, at *5-6.

If Plaintiff establishes a *prima facie* case, the burden of production shifts to the City to produce a legitimate, non-discriminatory reason for its adverse employment action. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Vakharia v. Swedish Covenant Hosp.,* 190 F.3d 799, 806 (7th Cir. 1999). The City must produce "evidence which, *taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis in original). If the City sets forth a legitimate justification for its action, the burden then shifts back to Plaintiff to prove that the City's reason is a pretext for discrimination.

---

[5]Plaintiff concedes that he has no direct evidence of race discrimination and that he must proceed via the indirect *McDonnell Douglas* burden shifting-method.

*Texas Dep't of Community Affairs,* 450 U.S. at 255-56, 101 S.Ct. 1089; *Vakharia,* 190 F.3d at 806-07. The ultimate burden of persuasion remains at all times with Plaintiff. *St. Mary's Honor Center,* 509 U.S. at 507, 113 S.Ct. 2742.

For the reasons stated below, Plaintiff has failed to establish a prima facie case of reverse race discrimination under Title VII because he has not met the first, second and fourth elements recited above. In any event, Plaintiff has also not shown pretext herein. Therefore, Plaintiff's reverse race discrimination claim is unavailing.

## A. Background Circumstances

Plaintiff initially argues that he was treated differently because of his race (Caucasian), such that, the City would not have discharged a similarly situated African-American or Hispanic Ward Superintendent. (Pl.'s Mem. at 3.) Moreover, Plaintiff contends that the City has attempted to cover up the real reason for why he was terminated. (*Id.* at 1.)

In order to establish a *prima facie* case of reverse discrimination, the Seventh Circuit has ruled that Caucasian plaintiffs must establish background circumstances "support[ing] an inference that the defendant is one of those unusual employers who discriminates against the majority." *Mills,* 171 F.3d at 455 (citation omitted); *see also Ferguson,* 108 F.Supp.2d at 1038; *Paulos-Johnson,* 2002 WL 230908, at *5-6.[6] Such background circumstances include evidence that the employer has some

---

[6] Plaintiff contends that the Seventh Circuit in *Hunt v. City of Markham,* 219 F.3d 649 (7th Cir. 2000) rejected the *Mills* formulation of the *prima facie* requirements in reverse discrimination cases. (Pl.'s Mem. at 4-5.) The Seventh Circuit, however, did no such thing. Rather, *Hunt* involved a situation where the plaintiffs presented direct evidence of discrimination in the form of racist comments by City officials. *Id.* at 652-53. As a result, there was no need for the Seventh Circuit to address the *prima facie* elements that must be established where the plaintiff has no direct evidence of discrimination.

Plaintiff also contends that even though he is Caucasian, the Court should not view this case as a reverse discrimination case because it does not arise out of efforts to redress discrimination through affirmative action. (Pl.'s Mem. at 3-4.) In *Hunt,* however, the Seventh

9

reason or inclination to discriminate against the majority (i.e., Caucasians), or evidence that there is something "fishy" (or strange) about the facts of the case. *Mills,* 171 F.3d at 455 (citations omitted); *Ferguson,* 108 F.Supp.2d at 1038. Moreover, in *Mills,* the Seventh Circuit noted that "if a plaintiff cannot show background circumstances, but 'has established a logical reason to believe that the [employer's] decision rests on a legally forbidden ground,' such as his race . . . he may shift the burden to the defendant to prove that the challenged employment action was actually based on legitimate, non-discriminatory reasons." *Id.* at 457 (citation omitted).

Plaintiff has failed to establish the first element (background circumstances) of his *prima facie* case of reverse discrimination, as there is nothing in the record to indicate that Plaintiff's employer had any reason or inclination to discriminate against Caucasians, the facts of the case are strange, or the City's decision rests on a legally forbidden ground.[7] In fact, the record evidence favors the City on this first element. For example, the facts in the case show that: (1) the majority of Ward Superintendents employed by the City between January 1, 1995 and December 31, 1997 were Caucasian;[8] (2) the 23rd Ward never employed a non-Caucasian Ward Superintendent; (3)

---

Circuit recognized that race discrimination claims by Caucasian plaintiffs constitute "reverse race discrimination" claims, even if such claims do not "arise out of efforts to redress historic injustices or mitigate racial tensions . . . " *Hunt,* 219 F.3d at 651.

[7]Herein, Plaintiff contends that the recent "adjudication of discrimination by [the City of Chicago] against white firefighters" (Pl.'s Mem. at 5 n.3) in *Cloud v. City of Chicago,* No. 88 CV 3773, 2002 WL 1160930 (N.D. Ill. May 31, 2002) constitutes evidence of background circumstances. The Court, however, notes that *Cloud* involved an entirely different department of the City of Chicago (the fire department), different decision-makers, a different type of discrimination (failure-to-promote), and a different period of time (including actions dating back to the late 1980's and early 1990's).

[8]The Ward Superintendents employed by the City between January 1, 1995 and December 31, 1997 were comprised of the following races: thirty-eight were Caucasian; twenty-three were African-American; fifteen were Hispanic; and one was Asian. (Def.'s LR56.1(a)(3) St. ¶ 13.)

Plaintiff was replaced on both a temporary and permanent basis by Caucasian Ward Superintendents; (4) all but one of the individuals even tangentially involved in Plaintiff's termination are Caucasian; and (5) Plaintiff was hired and fired by the same (Caucasian) decision-maker (Carey). (Def.'s LR56.1(a)(3) St. ¶¶ 13-15, 18-20, 31, 52, 57, 59.)

The Court, therefore, finds that Plaintiff cannot establish the first element of his *prima facie* case.

## B. Performance Expectations

Plaintiff asserts that he was performing his job adequately as Ward Superintendent from November 1, 1995 to October 16, 1997, the time during which he was employed by the City. (Pl.'s Mem. at 5.) During this period, Plaintiff contends he did not receive written criticisms ("write-ups") and was awarded merit raises based on two annual performance appraisals. (*Id.*) In addition, Michael Zalewski, the alderman for the 23rd Ward, wrote a letter on January 17, 1997 to Carey praising Plaintiff's job performance as Ward Superintendent. (*Id.* at 5-6.) Based on this letter, Plaintiff asserts that Alderman Zalewski agreed that Plaintiff was working hard as a Ward Superintendent and confirmed that he was doing a good job for the Ward. (*Id.* at 6.) Moreover, Plaintiff believes that Alderman Zalewski's views are entitled to greater weight because he worked for the Department of Streets and Sanitation for eighteen years before he became an alderman. (*Id.*)

In point of fact, however, Plaintiff has failed to establish the second element (that he was meeting the City's legitimate performance expectations) of his *prima facie* case because there is no evidence in the record to contradict or refute the City's contentions that he was not performing his

job satisfactorily.[9] Plaintiff's contention that he was meeting the City's legitimate performance expectations because he had not received any written criticisms of his performance is unavailing because there is no record evidence to suggest that the Department of Streets and Sanitation had a "policy" requiring that written criticisms or "write-ups" be placed in an employee's personnel file, or that an employee be informed (in writing or otherwise) that his performance was not satisfactory.[10] Moreover, Plaintiff's claim that he was never told that he was performing below the City's expectations disregards evidence in the record indicating that Plaintiff's superiors discussed his performance deficiencies amongst themselves and Ryan, his immediate supervisor, discussed Plaintiff's performance shortcomings with him. (Def.'s LR56.1(a)(3) St. ¶¶ 23-25, 27-35, 37-42.)

Based on the record evidence, Ryan had a number of problems with Plaintiff's performance while he was a Ward Superintendent which Ryan reported to his superiors; namely, Picardi, Sanchez

---

[9]Plaintiff failed to submit the required Northern District of Illinois Local Rule 56.1(b)(3)(A) response (which should include specific references to affidavits, parts of the record, and other supporting material relied upon) to Defendant's Statement of Undisputed Facts. Moreover, Plaintiff failed to prepare the required Local Rule 56.1(b)(3)(B) statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. Rather, the statements prepared by Plaintiff, respectfully, consist principally of references to unauthenticated exhibits, non-specific or inappropriate deposition pages, and unsupported conclusions. Furthermore, Plaintiff objects to many of the City's undisputed facts as being "not material to this case" and state that they are "not supported by admissible evidence and are the subject of [P]laintiff's motion to strike."
The Court further notes that the Seventh Circuit has emphasized that, "[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes . . . " *Waldridge v. Am Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). Consequently, the appropriate remedy for Plaintiff's failure to comply with the Court's rules is for the City's facts to be deemed admitted. *See id.*

[10]Plaintiff's reliance on seven unauthenticated documents placed in the personnel files of three Ward Superintendents by different decision-makers during the 1990's criticizing various aspects of their performance is insufficient to create such a policy. (*See* Exhibits attached to Pl.'s Add Factual Propositions.)

and Carey. (Def.'s LR56.1(a)(3) St. ¶¶ 23, 24.) For example, Plaintiff was not able to respond immediately to telephone requests from Ryan regarding the "vitals" of the Ward (Plaintiff would have to call Ryan back later with an answer); Plaintiff relied too heavily on the two coordinators working under him; Plaintiff refused to use his assigned City van during working hours; and Plaintiff could not be readily located via a City-issued pager or radio. (*Id.* ¶¶ 25, 27, 29, 30, 32.) At one time, Ryan wrote Plaintiff up for a three-day suspension for several of these problems; including, his inability to locate Plaintiff and Plaintiff's refusal to drive the City-issued van. (*Id.* ¶ 34.)

Plaintiff's assertion that he was meeting the City's performance expectations because he received merit increases based on his performance evaluations is unmeritorious. Plaintiff received performance ratings of "Good," which rather than confirming his performance was meeting expectations, merely indicated "acceptable performance, improvement is possible" and is the lowest rating an employee can receive and still receive a merit increase. (Def.'s LR56.1(a)(3) St. ¶¶ 44-48.) Sanchez, the supervisor who was responsible for completing Plaintiff's performance evaluations, indicated that he gave Plaintiff "Good" ratings only because he did not want to penalize Plaintiff monetarily for performing poorly, and he hoped Plaintiff's performance would improve. (*Id.* ¶ 49.) Moreover, as the evidence shows, while Plaintiff was on medical leave, when another Ward Superintendent (Caucasian) performed his duties, the 23rd Ward ran more smoothly and there was a noticeable improvement.[11] (*Id.* ¶¶ 52, 57.)

---

[11]During the summer of 1997, while Plaintiff was on medical leave, his duties were performed by foremen, Horatio D'Oronzo (Caucasian) from June 1, 1997 through June 30, 1997 and James Krystiniak (Caucasian) from July 7, 1997 through October 1997. (Def.'s LR56.1(a)(3) St. ¶¶ 52, 57.) During the time period that Krystiniak filled in for Plaintiff, sanitation services in the 23rd Ward ran smoother. (*Id.* ¶ 53.) For example, Krystiniak was more effective and efficient, could be easily located, and displayed good management skills. (*Id.*) Sanchez and Picardi discussed the fact that Krystiniak was doing a much better job in the 23rd Ward than

13

Plaintiff's next contention that Alderman Zalewski's January 17, 1997 letter to Carey constitutes evidence that he was meeting the City's performance expectations is without merit. As is pertinent here, in his letter, Alderman Zalewski commends efforts in removing snow on one occasion. Initially, this letter is unauthenticated hearsay, which must be stricken for the reasons set forth in footnote 9, *supra*. In any event, the Court finds that Alderman Zalewski's subject opinion of Plaintiff's performance is entirely irrelevant because he was not a decision-maker with respect to Plaintiff's employment; he was not involved in evaluating Plaintiff's general and total performance; he was not employed by the Department of Streets and Sanitation at the time he wrote the January 17, 1997 letter; and he was not a party to any discussions involving Plaintiff's performance. (Def.'s Resp. to Pl.'s Add'l Factual Props. ¶¶ FII.02-03.)

In view of the foregoing, the Court finds that Plaintiff cannot establish the second element of his *prima facie* case, because he has failed to present evidence that his job performance met the City's legitimate expectations.[12]

## C. **Similarly Situated Employees**

Plaintiff argues that he was terminated from his position as Ward Superintendent by the City

---

Plaintiff had been doing, and concluded that they would have fewer problems if Krystiniak took over as Ward Superintendent. (*Id.* ¶ 54.) Krystiniak worked as Ward Superintendent after Plaintiff's discharge; however, Plaintiff was permanently replaced by D'Oronzo. (*Id.* ¶ 52.)

[12]The Court notes that Plaintiff has attempted to create an issue of fact concerning his performance by suggesting that he believed he was satisfactorily performing. However, as the Seventh Circuit has stated, an employee's own assessment of his job performance is not sufficient to overcome the employer's good faith business judgment regarding the employee's performance. *Fortier v. Ameritech Mobile Communications, Inc.,* 161 F.3d 1106, 1114 (7th Cir. 1998). Moreover, it is not appropriate for the Court to substitute its own judgment of Plaintiff's performance for that of the City's business judgment. *See Mills,* 171 F.3d at 459 ("[This court does] not sit as a 'super-personnel department' with plenary authority to review [an employer's] business decisions").

because he was indicted for mail fraud. (Pl.'s Mem. at 9.) Moreover, Plaintiff asserts that the City

would not have terminated a similarly situated African-American or Hispanic Ward Superintendent

who had been charged with a criminal offense. (*Id.*) Plaintiff specifically points to the treatment of

one City employee, John Robertson (African-American),[13] whom he asserts was charged with a

crime, but was placed on administrative leave pending the outcome of his indictment and given

career service protection (and was not terminated). (*Id.* at 11.) Plaintiff, thus, claims that the City's

treatment of Robertson constitutes evidence of its policy to retain African-American or Hispanic

Ward Superintendents who are charged with a crime by placing them on leave pending resolution

---

[13]Plaintiff originally argued that three other non-Caucasian City employees; namely, Charles Fisher (African-American, Ward Superintendent, and career-service employee); Lashon Bennett (African-American, motor truck driver in the City's Fleet Management Department, and career-service employee) and Timothy Robinson (African-American, clerk in the City's Revenue Department, and career-service employee) who were involved in similar situations were allowed to remain employed, either on the job or on paid administrative leave during the investigations of their matters. (Def.'s LR56.1(a)(3) St. ¶¶ 71-75.) In Plaintiff's responsive brief, however, he now asserts that only Robertson is similarly situated. Pl.'s Mem. at 2, 11.

In any event, Bennett, Robinson, Fisher and Robertson are not similarly situated to Plaintiff. First, neither Bennett nor Robinson were employed by the City as Ward Superintendents, and Robinson never worked in the Department of Streets and Sanitation. Rather, both Bennett and Robinson worked in entirely different positions. (Def.'s LR56.1(a)(3) St. ¶¶ 73-74.) For this reason, Bennett and Robinson cannot be considered similarly situated to Plaintiff. *See Auston v. Schubnell,* 116 F.3d 251, 254 (7th Cir. 1997) (declining to consider individuals proffered by the plaintiff to be "similarly situated" where the plaintiff provided no evidence that the individuals were in the same department as plaintiff, worked the same hours, or reported to the same supervisor); *Mora v. Chicago Tribune,* 57 F.Supp.2d 626, 635 (N.D. Ill. 1999) (holding that to be similarly situated, a plaintiff must show that employees "(1) held the same or similar employment positions; (2) had similar employment histories; and (3) engaged in similar misconduct giving rise to the employment action"). In addition, unlike Plaintiff, the four individuals identified by Plaintiff as similarly situated were career-service employees and, as a result, they were entitled to certain job protection procedures, whereas Plaintiff had no expectation of job protection and was an employee-at-will. (*Id.* ¶¶ 73-78.) Furthermore, William McTighe, a Caucasian Ward Superintendent, was investigated by the Inspector General's Office but was not terminated. (*Id.* ¶ 79.) Thus, Plaintiff's attempt to compare himself to career-service employees fails as does his claim that the City terminates Caucasian employees accused of misconduct while retaining African-American employees accused of misconduct.

of the matter and reinstating them if the resolution is favorable to the employee. (*Id.*)

Plaintiff has failed to establish the fourth element of his *prima facie* case because he has failed to identify even one similarly situated individual that was treated more favorably by the City. To establish this element, Plaintiff must point to similarly situated non-Caucasian employees who engaged in similar conduct (i.e., employees who demonstrated similar deficiencies in their performance of the Ward Superintendent position), but were neither disciplined nor terminated. *See e.g., Ferguson,* 108 F.Supp.2d at 1039. "Such a comparison must 'demonstrate more than occasional leniency toward other employees who had engaged in conduct of a similar nature.'" *Id.* (citation omitted.)

Specifically, Plaintiff cannot compare himself to Robertson. First, Plaintiff has failed to establish any evidence supporting his assertion that he was terminated because he was indicted for mail fraud.[14] In fact, even though Plaintiff was not terminated until he returned to work from a leave of absence in October 1997, the decision to terminate Plaintiff was made by Carey during the summer of 1997, prior to Plaintiff's September 30, 1997 indictment. (Def.'s LR56.1(a)(3) St. ¶¶ 56-68.) The decision to terminate Plaintiff was based on Sanchez's and Carey's realization that Krystiniak (Plaintiff's replacement) was a more efficient and effective Ward Superintendent than Plaintiff. (*Id.* ¶¶ 52-57.) Since the decision to terminate Plaintiff was made prior to his indictment, Plaintiff cannot be considered to be similarly situated to Robertson who was indicted and subsequently placed on administrative leave pending the outcome of his indictment.

Next, Plaintiff's comparison to Robertson also fails because Robertson, unlike Plaintiff,

---

[14]While the City denies that it terminated Plaintiff because of his indictment, it is significant to note that Title VII does not protect individuals from being terminated simply because they have been indicted. *See* 42 U.S.C. § 2000e *et seq.*

16

received career-service status because he was employed by the City in a different position prior to becoming a Ward Superintendent in 1986. (Def.'s Resp. to Pl.'s Add'l Factual Props. ¶¶ FII.02-03.) Consequently, Plaintiff who was not a career-service employee was not entitled to the same job protection procedures as Robertson, and therefore is not similarly situated.[15] (Def.'s LR56.1(a)(3) St. ¶ 77.)

The Court, therefore, finds that Plaintiff cannot establish the fourth element of his *prima facie* case because he has failed to present evidence identifying any similarly situated individuals (i.e., non-Caucasian Ward Superintendents whose performance was poor) who were treated more favorably than he was by the City.

### D.    Pretext

Even assuming *arguendo* that Plaintiff has made the requisite *prima facie* showing as to the issues of background circumstances, performance expectations, and similarly situated employees, Plaintiff would still need to demonstrate that the City's proffered reason for its employment decision is a pretext for race discrimination. *See e.g. Vakharia,* 190 F.3d at 806-07. "Pretext . . . means a lie, specifically a phony reason for some action." *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 348 (7th Cir. 1997). Plaintiff need only "produce evidence from which a rational factfinder could infer that [the City] lied about its proffered reasons . . . " *Weisbrot v. Med. College of Wis.,* 79 F.3d 677,

---

[15]The position of "Ward Superintendent" has been an "exempt" or non-career service position since 1983, when judgment was entered in *Shakman v. Democratic Org. of Cook County,* 569 F.Supp. 177 (N.D. Ill. 1983). As noted, Plaintiff argues that the City afforded career-service protection to Robertson, an African-American who was hired as Ward Superintendent after the *Shakman* judgment and was not terminated when he was accused of wrongdoing. (Pl.'s Mem. at 2; Pl.'s LR56.1(b)(3)(B) St. ¶ FI.01.) Robertson, however, was a career-service employee by virtue of his prior positions with the City. (Def.'s Resp. to Pl.'s Add'l Factual Props. ¶ FI.01; Hennessy Aff.¶ 4; Pl.'s Ex. 34.) As such, unlike Robertson, Plaintiff was hired directly into the non career-service position of Ward Superintendent.

682 (7th Cir. 1996).[16] "The pretext inquiry focuses on the honesty–not the accuracy–of the employer's stated reason for the [adverse job action]." *Gibson v. AT & T Corp.*, No. 97 C 0501,1998 WL 774687, at * 8 (N.D. Ill. Oct. 28, 1998) (citation omitted). In addition, "[t]he fact that [an] employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual." *Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1310 (7th Cir. 1997).

Plaintiff argues that the City's purported reason (i.e., poor performance) for terminating him is pretextual and fails for several reasons. (Pl.'s Mem. at 7.) First, Plaintiff contends that the City could not honestly have believed that his performance warranted termination because his personnel file did not contain any written evidence of performance problems; he was never disciplined for failing to clean his ward; he received merit increases; and Alderman Zalewski wrote a letter praising him for his cleanup efforts during a snow storm in the winter of 1997. (*Id.* at 10-11.) The Court, however, finds that Plaintiff's assertions that his performance was not deficient fails for the reasons discussed *supra* in this opinion.[17]

---

[16]An employee may establish pretext by proving one of the following: "(1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the [adverse action]; or (3) the proffered reasons were insufficient to motivate the [adverse action]." *Wolf v. Buss, Inc.*, 77 F.3d 914, 919 (7th Cir. 1996).

[17]For instance: (1) Plaintiff has not offered any admissible evidence to contradict the performance deficiencies described in the record by the City; (2) the City has no policy requiring written or verbal criticism of poor performance; (3) Plaintiff cannot dispute the fact that his superiors discussed his performance problems amongst themselves; (4) Plaintiff's performance ratings of "Good" (which resulted in merit increases) indicated that "improvement is possible" and were given by Sanchez solely in an effort to avoid monetary penalties for Plaintiff's poor performance; (5) the 23rd Ward ran more smoothly when Plaintiff was replaced (by a Caucasian employee - Krystiniak) while he was on leave; (6) Zalewski's opinion of Plaintiff's performance is irrelevant because he was not a decision-maker in this case; and (7) Plaintiff's own view of his
(continued...)

Next, Plaintiff contends that the City could not have honestly believed that his poor performance warranted termination because the testimony of the decision-maker in this case, Carey, could not recall specific dates of conversations and she could not recall her involvement with the processing of certain paperwork involving his leave of absence and termination; consequently, Carey's inability to recall establishes pretext. (Pl.'s Mem. at 7-9.) On this point, however, the City asserts that Plaintiff grossly overstate's Carey's lack of recollection with respect to certain details, but more importantly, Plaintiff's attorney failed to ask the appropriate deposition questions of Carey and failed to adequately follow-up on questions which ultimately led to certain unanswered questions remaining after her deposition. (Def.'s Mem. at 11.) The City, thus, contends that Carey's affidavit is not an effort to "patch up her poor deposition performance" as Plaintiff contends (Pl.'s Mem. at 3); rather, it was necessitated by Plaintiff's attorney's decision not to pursue various lines of inquiry. (*Id.*)

Respectfully, the Court finds the City is correct. For example, although Plaintiff asserts that "Carey was . . . unable to explain at her deposition why Plaintiff had been fired effective October 23, 1997" (Pl.'s Mem. at 7), she testified as follows:

> Q.   [By Plaintiff's attorney] Do you know why the date of October 23, 1997 was chosen?
> A.   [By Carey] I think – I think there were always seven days given in a termination.

(Carey Dep. at 36; *See* Def.'s Resp. to Pl.'s Add'l Factual Props. ¶ FIV.02.) Moreover, even though Carey could not recall the specific reasons for Plaintiff's termination, she testified that she made the decision "because the people supervising him, [said] he was not performing, . . . , what we

---

[17](...continued)
performance is insufficient to create a question of fact.

considered, . . . the duties of the Ward Superintendent." (Carey Dep. at 10.) Carey further testified:

Q     [By Plaintiff's attorney] Well, did anything happen in October to cause you
      to fire [Plaintiff]?

A.    For the fact of not performing his job.

Q.    Well, are you telling us that your understanding is that [Plaintiff], in October
      of 1997, was not doing a good job as ward superintendent?

A.    I think it is safe to say that for a long time [Plaintiff] was not performing his
      duties as ward superintendent as I expected him to do.

(Carey Dep. at 30-31; *See* Def.'s Resp. to Pl.'s Add'l Factual Props. ¶ FIV.02.)

Plaintiff also claims that Carey's testimony lacks reliability because she did not mention during her deposition that Sanchez told her that Plaintiff was not driving the City van during working hours. (Pl.'s Mem. at 8.) While the Court notes that Carey did testify that one of the areas that Plaintiff's performance was not measuring up was "garbage pickup," Plaintiff's attorney did not follow-up by asking Carey if she could recall if there were any other performance deficiencies, nor was Carey asked to exhaust her recollection on that subject. (Carey Dep. at 22-24; *see* Def.'s Resp. to Pl.'s Add'l Factual Props. ¶ FIV.02.) Therefore, the Court finds Plaintiff's argument to be unavailing.

Plaintiff further asserts that Carey could not remember any of the specific job performance concerns she had regarding Plaintiff during the months of June 1997 through September 1997 that caused Carey to terminate him on October 16, 1997. (Pl.'s Mem. at 7-8.) The Court, however, notes that Plaintiff was not working during this entire period because he was on medical leave. (Def.'s LR56.1(a)(3) St. ¶ 50.) Moreover, the Court notes that Carey was the Commissioner of the entire Department of Streets and Sanitation at the time, and the events at issue occurred more than four and one-half years before her deposition was taken. (*See* Def.'s Resp. to Pl.'s Add'l Factual Props. ¶ FIV.03.)

Plaintiff contends that Carey's affidavit statement that she had decided, during the summer of 1997, to terminate Plaintiff was contradicted by Sanchez's deposition testimony. (Pl.'s Mem. at 8-9.) To the contrary, Sanchez testified that, while Plaintiff was on leave during the summer of 1997, Plaintiff's replacement, Krystiniak (Caucasian), did a much better job of running the Ward. (Def.'s LR56.1(a)(3) St. ¶¶ 52-54.) Sanchez testified that he discussed the situation with Carey as well as the fact that they were disappointed with Plaintiff's performance. (*Id.* ¶ 55.) Furthermore, Carey and Sanchez also reached the conclusion, during the summer, that it was time for a change. (*Id.* ¶ 56.) The Court, therefore, finds that Sanchez's testimony is consistent with Carey's affidavit testimony that she made the decision to terminate Plaintiff's employment during the summer of 1997 and that Plaintiff was not terminated at the time because Carey was under the erroneous impression that such employment actions could not be taken while an employee was on leave. (*Id.* ¶¶ 57-58.)

Finally, Plaintiff asserts that he was terminated because he is a Caucasian employee who had been indicted. (Pl.'s Mem. at 6-7, 9-11.) Plaintiff contends that immediately after he was indicted, "City personnel requested that [he] resign from his position as Ward Superintendent." (*Id.* at 6.) Moreover, Plaintiff further asserts that he refused to resign and retained an attorney who wrote a letter (Pl.'s Resp. to Def.'s LR56.1(a)(3) St., Ex. 3), on his behalf to Carey, requesting that his employment be protected while the criminal matter was pending. (*Id.*)

The Court finds Plaintiff's assertion that he was asked to resign after he was indicted also to be unavailing. First, Plaintiff has failed to produce and/or refer to the subject letter in any of his discovery responses or at his deposition. Second, the subject letter of Plaintiff's attorney is contradicted by the testimony of Alderman Zalewski, the individual who supposedly asked him for his resignation after he was indicted. The subject letter of Plaintiff's attorney states that Plaintiff has

"been advised by Alderman Zalewski that his resignation is requested because of a federal indictment returned last week that relates to [Plaintiff's] private security business." (Pl.'s Ex. 3, Oct. 15, 1997 Ltr. to Carey from Plaintiff's attorney). At his deposition, however, Zalewski testified as follows:

> Q:   [By Plaintiff's attorney]: Do you have any reason to believe that [Plaintiff] was terminated because he had been indicted?
>
> A.   [By Alderman Zalewski]: To be very honest, I don't know why he was terminated. I mean, I was never told why he was terminated. It wasn't my position to be told why he was terminated, so no, it had nothing – as far as I am concerned, you know, with his indictment – I don't know why he was terminated.

(Zalewski Dep. at 26.) Consequently, the subject letter Plaintiff references, which incidentally is inadmissible hearsay, does not, in reality, constitute evidence that Plaintiff's indictment played any part in his termination.[18]

Finally, relative to the pretext for race discrimination issue, Plaintiff has presented no evidence to contradict the "common actor" presumption of non-discrimination that applies to this case. Under Seventh Circuit case law, " . . . when an employee is hired and fired by the same decision-maker in a relatively short time span, a presumption, or inference, of nondiscrimination arises." *Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 399 (7th Cir. 1997). Herein, the decision to hire Plaintiff was made by Carey in December of 1995. (Def.'s LR56.1(a)(3) St. ¶¶ 15, 18.) Less than two years later, Carey was the ultimate decision-maker regarding Plaintiff's termination. (*Id.* ¶¶ 57, 59.) Additionally, the Court notes that all but one of the individuals even

---

[18]Plaintiff also claims that Carey's affidavit creates admissible evidence by way of a "negative pregnant." (Pl.'s Mem. at 11.) The Court, however, finds that the only thing Carey's affidavit establishes is that she never discussed Plaintiff's indictment with anyone in terms of the decision to terminate him. The fact that the City and Carey carefully state the facts does not create an inference that Plaintiff's indictment played any role in his termination. Moreover, Plaintiff did not pursue this issue at Carey's deposition.

tangentially involved in Plaintiff's termination are Caucasian (the sole exception was Sanchez who is Hispanic), an indication which further points to the fact that Plaintiff's discrimination claim is baseless. (*Id.* ¶¶ 15, 16, 19-20, 31.) Therefore, the Court finds that Plaintiff has presented no evidence to overcome the common actor presumption.

The Court finds that the City has produced a legitimate, nondiscriminatory reason for terminating Plaintiff; namely, his poor performance and Plaintiff has failed to adduce any evidence demonstrating that the City's proffered reason is a lie or pretext for discriminating against him based on his race.

## CONCLUSION[19]

Based on the foregoing, when viewing the evidence in the light most favorable to Plaintiff, a genuine issue of material fact does not exist and a fair-minded jury could not return a verdict for him on the evidence presented as it relates to his reverse race discrimination claim.

Accordingly[20], the City's motion for summary judgment is granted and the cause is dismissed with prejudice.

ENTER:

IAN H. LEVIN
**United States Magistrate Judge**

**Dated: October 1, 2002**

---

[19]In view of the Court's ruling herein, it is deemed unnecessary to consider Plaintiff's and Defendant's other arguments raised herein.

Too, Plaintiff refers to his FMLA claim in his response memorandum. However, that cause having been previously dismissed by the Court, and a motion to reconsider that ruling having been denied, it is not necessary to address that claim further here.

[20]Plaintiff's Motion to Strike is denied, except as to paragraph 21 of the City's statement.